

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-12-2003

# Ford v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket 02-2891

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Ford v. Comm Social Security" (2003). *2003 Decisions.* Paper 803.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/803

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 02-2891
_____

JEFFREY R. FORD, SR.,

Appellant,

v.

JO ANNE B. BARNHART*
Commissioner of Social Security.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

(D.C. Civil No. 01-cv-237)
District Judge:  The Honorable Robert J. Cindrich
_____

Submitted Under Third Circuit LAR 34.1(a)
January 23, 2003

BEFORE:  NYGAARD, AMBRO, and LOURIE,* Circuit Judges.


(Filed February 12, 2003)


_____

OPINION OF THE COURT
_____

LOURIE, Circuit Judge.

Jeffrey R. Ford, Sr. applied for supplemental security income ("SSI") benefits on September 28, 1997, alleging disability since December 31, 1995, due to mood swings, irritability, depression, and sleeplessness caused by bipolar disorder.  In its Notice of Disapproved Claim dated January 9, 1998, the Social Security Administration (the "SSA") informed Mr. Ford of its determination that he was not disabled.  Ford then filed a Request for Reconsideration.  The SSA thereafter affirmed its previous determination in its Notice of Reconsideration dated March 17, 1998.  At Ford's request, an Administrative Law Judge ("ALJ") held a hearing on his denial, at which Ford, his ex-wife, and a vocational expert, William H. Reed, Ph.D., testified.  The ALJ concluded in his April 29, 1999 decision that Ford was ineligible for SSI benefits.  On December 8, 2000, the SSA's Appeals Council denied Ford's subsequent request for review, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner").

Ford initiated a civil action under 42 U.S.C.  405(g) for review of the ALJ's decision in the District Court.  Both Ford and the Commissioner moved for summary judgment.  The District Court denied Ford's motion and granted the Commissioner's motion.  Ford v. Massanari, No. 01-cv-237 (W.D. Pa. June 7, 2002).  This appeal

followed. We have jurisdiction pursuant to 28 U.S.C. 1291. Because the Commissioner's final decision was supported by substantial evidence, we affirm the District Court's order.

Our review of Social Security appeals is limited to determining whether the Commissioner's final decision was supported by "substantial evidence." 42 U.S.C. 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Substantial evidence is "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); however, it is not "a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Pierce v. Underwood, 487 U.S. 552, 565 (1988) (internal quotation marks and citation omitted).

Social Security regulations prescribe a five-part test for evaluating a claim for SSI benefits. First, an applicant is required to establish that he is not working, or, if he is working, that he is not performing "substantial gainful activity." If the applicant meets that requirement, he is then required to show that he has an "impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities." If the applicant satisfies those first two requirements and also has "an impairment(s) which meets the duration requirement and is listed in appendix 1 [i.e., 20 C.F.R. pt. 404, subpt. P, app. 1; hereinafter, the "Appendix"] or is equal to a listed impairment(s)," then he is deemed disabled without consideration of age, education, or work experience. If the applicant cannot make the showing detailed in the third part of the test, but nonetheless satisfies the requirements of the first two parts of the test, he th needs to show that his impairments prevent him from doing his past relevant work. If the applicant satisfies that fourth part of the test, then the burden shifts to the Commissioner to prove that the applicant can perform other work in the national economy. If the Commissioner is unable to provide such proof, then the fifth part of the test is satisfied and the applicant is considered to be disabled. 20 C.F.R. 404.1520, 416.920.

In the present case, Ford did meet the first two requirements of the test, but failed to meet the third or fourth. The record shows that the ALJ considered the opinions and assessments of all treating, examining, and evaluating medical sources of record, including those of Ford's treating psychiatrist, John Brooks, M.D. The ALJ found that, although Ford had not "engaged in substantial gainful activity at any time since the alleged onset of his disability," and had provided evidence supporting a finding of his having "bipolar affective disorder," a "severe impairment" as defined in 20 C.F.R. 404.1521 and 406.921, he nonetheless failed to show that his impairment either met or was equivalent in severity to the criteria of any impairment listed in the Appendix. The ALJ found, moreover, that Ford retained the residual functional capacity to return to the work he had performed in the past as a stocker-cleaner. The ALJ concluded, therefore, that Ford was not under a disability, "as that term is defined in the Social Security Act and regulations."

On appeal, Ford argues, first, that the ALJ failed to evaluate properly whether Ford's impairment met or equaled the listing for affective disorder at 12.04 of the Appendix. In support of that argument, Ford asserts that the ALJ failed to apply 20 C.F.R. 404.1527(d) properly, and that he "completely discredit[ed] Dr. Brooks' opinion" without articulating adequate reasons for doing so.

Ford's argument is without substance. While the ALJ is to give a treating physician's opinion controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," 20 C.F.R. 404.1527(d)(2) (2002), an ALJ may reject the opinion of a treating physician if it is "conclusory and unsupported by the medical evidence." Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). In the present case, the record reflects that the ALJ reviewed the evaluations that Ford alleges were given insufficient weight, and found that those from March 1999 were indeed both conclusory and "not supported by other objective evidence of record," and were "based on the claimant's own subjective estimation of his limitations and not specifically tied to the psychiatrist's or the therapist's own clinical observations."

Whether Ford was "disabled" as that term is used in the Social Security Act is a legal conclusion reserved to the Commissioner or his delegate. The ALJ thus correctly stated that Brooks' and Duncan's opinions that Ford was disabled were not binding on him. Moreover, we agree with the District Court that, if the ALJ committed any error by

failing to credit Brooks' and Duncan's opinions with regard to whether Ford's condition met the requirements of the listed elements, that error was harmless because the record clearly reflects that the discredited evidence was inconsistent with the remainder of the medical evidence generated by Ford's treating physicians at the Irene Stacy Mental Health Center, where Ford had been regularly treated; the observations of the state agency physicians and psychologists who reviewed Ford's medical records; and even Brooks own earlier reports.

In view of the inconsistencies in the record, we conclude that the ALJ did not err by discrediting Brooks' conflicting opinion. Furthermore, the balance of the record provides substantial evidence supporting the ALJ's findings that Ford had only slight restriction of activities of daily living, had moderate difficulties in maintaining social functioning, often had difficulties in maintaining concentration, persistence, or pace, and never had episodes of decompensation of extended duration. Based on those findings, it appears that only the third of the "results" required by 12.04 of Appendix 1 was present, and therefore we conclude that substantial evidence also supports the ALJ's ultimate conclusion that Ford was not disabled.

Ford also asserts that the ALJ erred by failing to consult with a medical expert regarding his residual functional capacity ("RFC") and whether he met the requirements of the listing. Contrary to Ford's assertion, however, the record clearly indicates that Ford's medical records from 1995 to 1997 were reviewed first by physician Jay Newberg, M.D., and psychologists Sharon Becker Tarter, Ph.D., and Roger Glover, Ph.D., in 1997; and then by physician K. Loc Le, M.D., and psychologist Raymond F. Dalton, Ph.D., in 1998. The record also reflects that the ALJ reviewed not only the reports of those professionals, but also subsequent reports prepared by Brooks and Duncan. The ALJ's decision to give reduced weight to Brooks' and Duncan's March 1999 letter and forms, as discussed above, does not negate his reliance on the remainder of the record. The record contains substantial evidence supporting the ALJ's finding that Ford retained the RFC to perform jobs that entailed simple, routine, one- or two-step tasks, but not work entailing handling more than occasional contact with co-workers, supervisors, or the public, or work that is unstable or requires significant or frequent decision making. Substantial evidence thus supports the ALJ's conclusion that Ford had not met his burden of showing that he could not perform his past relevant work as a stocker-cleaner.

Finally, Ford argues that the ALJ erred by failing to make proper credibility findings as to the witnesses' testimony at the hearing. We disagree, observing that the ALJ did, in fact, articulate his reasons for his negative credibility findings. The ALJ found, for example, that "Ford's statements concerning his impairment and its impact on his ability to work are not entirely credible," because his work history was "too sporadic to allow for a reasonable presumption that he is motivated to work and would in fact be working if it were not for the effects of his impairment. The record . . . shows erratic earnings for a period that predates the onset of the claimant's affective disorder, as documented in the medical evidence." The ALJ also found that Ford's testimony regarding side effects of his medications did not entirely comport with his reports to his physicians. With regard to the testimony of Ford's ex-wife, the ALJ found that "[t]estimony received from the claimant's wife is also somewhat suspect, as she has custody of their minor child and therefore retains a financial interest in the claimant receiving a disability income." On the basis of these statements, we find no error in the ALJ's discounting of the weight of Ford's and his ex-wife's testimony. We agree with the District Court that the ALJ's discussion of his reasons for not accepting the witnesses' testimony at face value, although brief, was clear and sufficiently detailed to permit effective review of his conclusions. Ford, slip op. at 10.

We have considered Ford's other arguments and do not find them persuasive. Because we find that substantial evidence supports the ALJ's denial of SSI benefits to Ford, we affirm the District Court's decision.


/s/ Alan D. Lourie
Circuit Judge